**BOSTON AND MAINE CORPORATION,**
Appellee,

v.

**ILLINOIS CENTRAL RAILROAD COM-
PANY, Appellant.**

No. 396, Docket 32000.

United States Court of Appeals
Second Circuit.

Argued April 30, 1968.

Decided May 31, 1968.

Donald L. Wallace, New York City
(Clark, Carr & Ellis, New York City;
Craig M. Shields, New York City, of
counsel), for appellant.

Robert S. Ogden, Jr., New York City
(Donovan, Leisure, Newton & Irvine,
New York City; Carl E. Newton, M.

Lauck Walton, New York City, of coun-
sel), for appellee.

Before WATERMAN, FRIENDLY
and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

This is another in a series of cases in
which the District Court for the South-
ern District of New York has granted
Boston & Maine Corporation (B & M)
summary judgment against middle west-
ern railroads to enforce awards of arbi-
trators under the mandatory arbitration
rules of the Association of American
Railroads (AAR) holding B & M entitled
to collect interline freight balances with-
out set-off of the defendants' claims for
per diem freight car rentals—the proper
amount of which bids fair to be settled at
long last on judicial review of the order
of the Interstate Commerce Commission
in Chicago, B. & Q. R.R. v. New York,
Susquehanna & W. R.R., 332 I.C.C. 176
(1968). We affirmed such judgments in
Boston & Maine Corp. v. Chicago, B. &
Q. R.R., 381 F.2d 365 (2 Cir.1967), and
Chicago & N. W. R.R. v. Boston and
Maine Corporation summary affirmance,
unreported, cert. denied, 390 U.S. 1027,
88 S.Ct. 1419, 20 L.Ed.2d 285 (1968).
We agree with the Illinois Central (IC)
that this case is different; indeed, if we
were dispensing Cadi justice, we would
be disposed to rule in defendant's favor.
However, the limited scope of judicial
review under the Federal Arbitration Act
forbids our doing so, and we therefore af-
firm Judge Herlands' judgment, 274 F.
Supp. 257 (1967).

The difference arises from the fact
that B & M initially sought to collect in-
terline balances accruing from May 1
through September 30, 1958,[1] by a suit
in the Supreme Court of New York.
That court sustained the sufficiency of
IC's counterclaim for per diem freight
car rentals and denied B & M's motion
for summary judgment, but held that the
determination of amount should await
the decision of the Interstate Commerce
Commission in the proceeding cited

1. The interline balances in the arbitration award accrued between May 1, 1958 and April 1965.

above. Several years later, in 1963, the parties filed a stipulation in the state court that neither would take any action "before this Court in the above-captioned action" until the I. C. C. had fixed per diem rates and judicial review had been concluded, at which time the attorneys for the parties would utilize their best efforts to resolve any remaining issues.

With something less than full regard for the spirit of the stipulation, B & M, in July 1965, invoked the mandatory arbitration rules of the AAR to recover the interline freight balances withheld by IC. Although contesting the propriety of arbitration in view of the New York state action and the stipulation filed in that case, IC participated therein. The three arbitrators ruled against IC's claim of set-off and were affirmed by the Appeals Committee.[2]

While the briefs contain much discussion of "jurisdiction" and "waiver," two of the most elusive and chameleon like phrases in the legal lexicon, the issue is quite simple. The parties made an arbitration agreement valid under the Federal Arbitration Act, 9 U.S.C. § 2. The grounds for vacating an award are exceedingly few, 9 U.S.C. § 10; the only one even remotely applicable is a portion of § 10(d), "Where the arbitrators exceeded their powers * * *." But we have held only recently, World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362, 364–365 (2 Cir. 1965), that bringing an action instead of seeking arbitration does not destroy the agreement to arbitrate, that parties may agree that the effect of the action shall itself be arbitrated, and that any doubts regarding their intentions as to the treatment of so-called "procedural issues" should be resolved in favor of arbitrability. While the combination of B & M's bringing an action in the New York courts, the proceedings there taken, and the stipulation, on the one hand, and the possible inability of the AAR arbitrators to consider the issue of "waiver,"—more accurately, election—on the other, might well have justified a stay of arbitration in a proceeding by IC under New York CPLR § 7503 or in a federal suit for an injunction, compare Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, etc., 269 F.2d 618 (2 Cir. 1959); Greenstein v. Nat'l Skirt & Sportswear Ass'n, Inc., 274 F.2d 430 (2 Cir. 1960), IC sought no such relief, as the Lehigh & New England successfully did in an action pending before Judge Ryan.[3] Having submitted the entire controversy, including the claim of "waiver" of arbitration by B & M, to the arbitrators, IC is bound by their decision.

Local 719, American Bakery & Grocery Workers of America, AFL-CIO v. National Biscuit Co., 378 F.2d 918 (3 Cir. 1967), on which IC places great reliance, dealt with a claim of lack of arbitrability and not of "waiver" of arbitration, con-

---

2. The only clear statement by any of the three arbitrators on whether the New York state suit and the stipulation constituted a binding election was by the chairman who said, "As a layman it is hard for me to consider the action of the court as a preventive for any further cause of action by the B & M particularly due to the variance in periods covered." It seems likely that the Appeals Committee thought itself unable to entertain IC's "waiver" objection, although statements that it could not "consider legal aspects" were addressed also to IC's contention that the right of set-off was *res judicata* as a result of the decision of the New York court. Even if the Appeals Committee erred in thinking that the mandatory arbitration rules forbade its considering the "waiver" objection, as to which we express no opinion, this would not entitle IC to relief. See Wilko v. Swan, 346 U.S. 427, 436–437, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

3. We are unpersuaded that the stipulation in the New York state action prevented IC's pursuing these roads to relief— even if an inability created by its own act would matter. The stipulation barred only further proceedings "in the above-captioned action," where as an application under CPLR § 7503 for a stay or a plenary suit in the federal court to enjoin the arbitration would have been a separate proceeding. Such proceedings, not prohibited by the words of the stipulation, would have been precisely in its spirit.

trast 378 F.2d at 923. We therefore need not decide whether we would follow that decision or what seem the contrary implications of Reeves v. Tarvizian, 351 F.2d 889 (1 Cir. 1965) [Massachusetts law], and Nat'l Cash Register v. Wilson, 8 N.Y.2d 377, 208 N.Y.S.2d 951, 171 N.E.2d 302 (1960) [New York law], in a proceeding governed by the Federal Arbitration Act, as *Local 719* was not, see 9 U.S.C. § 1.

Affirmed.