**LUCKENBACH OVERSEAS CORP.,**
**Petitioner-Appellant,**

v.

**James CURRAN, as President of the National Maritime Union, Respondent-Appellee.**

**No. 549, Docket 32355.**

United States Court of Appeals
Second Circuit.

Argued June 6, 1968.

Decided July 24, 1968.

Martin Seham, New York City (Kopple & Seham, New York City, on the brief), for petitioner-appellant.

Stanley B. Gruber, New York City (Abraham E. Freedman, New York City, on the brief), for respondent-appellee.

Before WATERMAN, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

The appellant, Luckenbach Overseas Corporation (Luckenbach), and the National Maritime Union (NMU) are parties to a collective bargaining agreement which covers the unlicensed seamen employed aboard Luckenbach's vessels, and by its terms, is effective until June 15, 1969. The contract contains mutual promises of the parties not to engage in lockouts or strikes.[1] In addition to the grievance and arbitration provisions normally found in such collective bargaining agreements, this contract also provides a specialized "quickie" arbitration procedure designed for lockout or strike cases to permit either party to obtain arbitration within 24 hours after the prescribed notice of a dispute or grievance is given.[2]

In December, 1967, Luckenbach contracted to sell its entire fleet of four vessels to Overseas Carriers Corporation (Overseas). The precise relationship between Overseas and Luckenbach is not clear, but the district judge said " * * * it appears that some interrelationship between the two exists." The agreement of sale was executed while the four vessels were at sea, and it provided that the transfer of title and control of each vessel would occur upon its return to the United States.

In February, 1968, the S.S. Horace Luckenbach, the first of the four vesels to return, docked at San Francisco. The transfer was effected, and Overseas discharged Luckenbach's crew and replaced the NMU seamen with seamen represented by Seafarers International Union (SIU), with whom Overseas had a collective bargaining agreement. This was in accord with the custom of the maritime industry, recognized by the National Labor Relations Board, which requires that a newly acquired vessel be subject to the collective bargaining agreement of the transferee fleet, see Moore McCormack, 139 N.L.R.B. 796 (1962). When the NMU seamen refused to leave the ship, Overseas commenced a possessory libel action in the United States District Court for the Northern

---

1. Article I, Section 3 of the collective bargaining agreement forbids lockouts by the employer in the following language: "Section 3. Lockouts. The Company agrees that during the life of this agreement and any period of negotiation for its renewal there shall be no lockouts of the Unlicensed Personnel. However, this section shall not prevent the orderly termination by the Company of the employment of any or all of the Unlicensed Personnel on any vessels as and in the manner provided by the shipping articles nor shall it prevent the discharge of any member of the Unlicensed Personnel for just cause. A violation of this provision shall render this agreement null and void at the option of the Union.

2. Article XII, Section 1(a), provides: "(a) Notwithstanding any of the foregoing any party to a dispute or grievance may waive the grievance and arbitration provisions referred to above whenever a violation of Article I, Section 2 and/or 3 of this agreement shall be alleged. In such event, such dispute or grievance shall be asserted by notice in writing by registered mail or by telegram, return receipt requested, given to the other party. A copy of such notice shall be sent simultaneously to Theodore W. Kheel, the permanent arbitrator under this agreement. Said arbitrator or his designee shall hold an arbitration hearing as expeditiously as possible but in no event later than 24 hours after receipt of said notice. The award of the arbitrator shall issue forthwith and in no event later than 3 hours after the conclusion of the hearing unless the grieving party agrees to waive this time limitation with respect to all or part of the relief requested.

District of California and the United States Marshal forced the seamen to leave.

NMU immediately filed unfair labor practice charges with the Board in New York, Second Region, alleging that Luckenbach, Overseas, and a third company which is the managing agent for the other two, had violated § 8(a) (1), (3) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1), (3) and (5), in that they had discriminated against seamen because of union membership, had refused to bargain collectively, and had interfered with, restrained and coerced the NMU seamen in the exercise of their rights under § 7 of the Act. The Regional Director for the Second Region found that the NMU crew members were not discriminatorily discharged in violation of the Act, that Luckenbach had not refused to bargain, that Overseas was not an alter ego of Luckenbach, and that the sale of the four vessels was motivated by good faith business reasons. On the basis of these findings, the Regional Director refused to issue a complaint and his decision was affirmed by the Board's General Counsel.

During the processing of NMU's claims before the Board in New York, NMU picketed the S.S. Horace Luckenbach in San Francisco; whereupon Overseas filed unfair labor practice charges with the Board in San Francisco, Twentieth Region, and asked the Board to seek injunctive relief in the United States District Court for the Northern District of California. The Regional Director for the Twentieth Region moved pursuant to § 10(*l*) of the Act, 29 U.S.C. § 160(*l*), for injunctive relief, and after hearings and argument, William T. Sweigert, District Judge, issued the requested injunction on the ground that there was reason to believe that NMU had violated § 8(b) (7) because SIU and not NMU was the appropriate representative of the seamen employed aboard the vessel.

On April 4, 1968, three days after the adverse decision by the Regional Director in New York and one day after Judge Sweigert issued the injunction, NMU initiated the "quickie" arbitration proceeding by notifying the permanent arbitrator under its collective bargaining agreement with Luckenbach that it wished to avail itself of that procedure. The arbitration was scheduled for the next day, April 5, 1968, but before the hearing began Luckenbach commenced the present action against the appellee, Joseph Curran (named in the complaint as James Curran), as President of NMU, in the Supreme Court of the State of New York, New York County, by filing a petition for an order to show cause seeking a stay of the arbitration initiated and requested by NMU. The order to show cause was issued by Justice Hyman Korn and included a temporary restraining order staying arbitration pending a hearing on the petition.

Thereafter, NMU removed the action to the United States District Court for the Southern District of New York and moved to dissolve the temporary stay of arbitration and to dismiss the appellant's petition for a further stay. The district judge granted the motions and Luckenbach has appealed.

■ On April 4, 1968, the day NMU sought the "quickie" arbitration, it also filed a complaint in the United States District Court for the Southern District of New York seeking a declaratory judgment under § 301 of the Taft-Hartley Act, 29 U.S.C. § 185. The complaint alleged that Luckenbach breached the collective bargaining agreement by selling the vessel and terminating the employment of the NMU seamen, and sought an order directing Luckenbach to recognize the NMU as bargaining agent for seamen employed on the vessel in the possession and control of Overseas.[3]

■ The thrust of Luckenbach's argument is that arbitration in this case

---

3. Although the issue was not raised below, the district judge nevertheless decided that by commencing this suit NMU did not waive its right to arbitration under

the contract because the action "represents an attempt by counsel to explore all possible avenues of redress, and is *not clearly* inconsistent with arbitration

is precluded by the facts found and policies expressed by the Regional Director when he decided not to issue the unfair labor practice complaint sought by NMU. But that decision and its affirmance by the Board's General Counsel, do not foreclose the possibility that NMU may have rights and remedies under the collective bargaining agreement. Different issues are presented in each instance and it is conceivable, as the district judge stated, that the arbitrator could fashion a remedy under the contract which would not conflict with Board policy or the Regional Director's decision.[4] These questions, arising out of the collective bargaining agreement, are proper subjects for arbitration, and if the decision of the arbitrator conflicts with Board policies or decisions, it is subject to later review and correction in the courts. To make awards in damages to NMU for breaches of the contract would not subvert the Board policy that a newly acquired vessel is subject to the collective bargaining agreement of the transferee fleet. They would, of course, be allowed only when the arbitrator could properly find that they were based on rights provided for in the collective bargaining agreement.

▮ Although the decision of the Regional Director not to issue a complaint does not preclude general grievance and arbitration procedures in this case, NMU is not entitled to pursue this arbitration by the "quickie" procedure provided in the contract. Under those provisions, the arbitrator is permitted to consider only allegations that Luckenbach engaged in a lockout of the employees or that NMU engaged in a strike against Luckenbach. No special definition of the word "lockout" is included in the agreement but the facts surrounding the discharge in this case do not fit the usual and customary definition. See Betts Cadillac Olds, Inc., 96 N.L.R.B. 268, 282–283 (1951) (summarizing definitions of "lockout"); Oberer, Lockouts and the Law: The Impact of American Ship Building and Brown Food, 51 Corn.L.Q. 193, 195 (1965) (summarizing the usual purposes of a "lockout").

The reason for the "quickie" arbitration procedure provided is clear: the exigencies which accompany lockouts and strikes render general grievance and arbitration procedure ineffective, and the "quickie" procedure was designed to give the parties prompt access to remedies, such as reinstatement, in order to avoid unnecessary or irreparable harm.

NMU's counsel conceded during the oral argument that it no longer sought reinstatement, as it obviously could not do without being in conflict with the pol-

---

* * *." See Chatham Shipping Co. v. Fertex S. S. Corp., 352 F.2d 291 (2 Cir.1965); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410–412 (2 Cir.1959), appeal dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); In re Tsakalotos Navigation Corp., D.C., 259 F.Supp. 210, 213 (1966).

The waiver question was not clearly or properly raised on this appeal, although the appellant may have sought to do so in a somewhat oblique way in its brief. In any event, Judge Tenney's disposition of it is not clearly erroneous, nor do the facts come within that portion of a recent opinion of this court in Boston & Maine Corp. v. Ill. Cent. R.R. Co., 396 F.2d 425, 426 (2 Cir. 1968) (May 31, 1968), in which the court suggested that the totality of circumstances in the case, consisting of several factors, of which the bringing of an action was only one, might well have justified a stay of

the arbitration, but that there was no such stay because no one asked for it.

4. The argument, asserted by the appellant in this case, that the Regional Director's refusal to issue an unfair labor practice complaint precludes arbitration under the collective bargaining agreement was rejected by Judge Weinfeld in a very recent decision, IUE v. General Electric Co., 278 F.Supp. 991, 1002 (S.D.N.Y. 1968). Judge Weinfeld held that where the Regional Director had refused to issue a complaint on charges that certain firings of employees violated § 8(a) (2) of the Act and where the issue before the arbitrator would be whether the employees had been improperly discharged under the collective bargaining agreement, arbitration should not be precluded for the reason, among others, that the two issues are not co-extensive.

icy of the Board; moreover, the limited circumstances for which the "quickie" procedure was designed do not obtain. Other than the lockout allegation, NMU has nowhere specified what violations of the collective bargaining agreement it claims, or whether it intends to proceed under the prescribed grievance machinery and invoke the regular provision for arbitration. We hold only that such arbitration is not precluded by the decisions of the Regional Director and the General Counsel.

Accordingly we modify the order of the District Court to provide that the stay shall remain in full force and effect insofar as any "quickie" arbitration proceedings are concerned but, as the District Court provided, the stay is vacated and dissolved to the extent that it may be applicable to proceedings under the regular grievance and arbitration provisions of the collective bargaining agreement.