392 F.Supp. 1044 (1975)
In the Matter of the Arbitration between LOCAL 259, UNITED AUTOMOBILE WORKERS, UAW, Petitioner-Respondent,
and
KELLOGG PONTIAC SALES CORPORATION, Respondent-Petitioner.
No. 74 Civ. 535.
United States District Court, S. D. New York.
April 8, 1975.
*1045 Sipser, Weinstock, Harper & Dorn, New York City, for petitioner-respondent; Belle Harper, New York City, of counsel.
Putney, Twombly, Hall & Hirson, New York City, for respondent-petitioner; Edward F. Callan, David H. Diamond, New York City, of counsel.
NLRB, Washington, D.C., for intervenor; Abigail Cooley, Washington, D.C., of counsel.

OPINION
GRIESA, District Judge.
Local 259, United Auto Workers, petitioned the New York Supreme Court to confirm the arbitration awards of Arbitrator Nathan Cohen of June 18, 1973 and December 27, 1973, issued in an arbitration proceeding between Local 259 and Kellogg Pontiac Sales Corp. Kellogg removed the suit to this court, which has jurisdiction under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).
Kellogg moves to dismiss the petition to confirm the arbitration awards on the ground that it fails to state a claim on which relief may be granted, and alternatively moves for summary judgment dismissing the case.
The National Labor Relations Board has intervened, and moveslike Kellogg to dismiss the petition or in the alternative for summary judgment.
The motions of Kellogg and the NLRB to dismiss the petition to confirm the Arbitrator's awards, or in the alternative for summary judgment, are denied. The motion of Local 259 to confirm the arbitration awards is denied as to the award of June 18, 1973 and granted in part and denied in part as to the award of December 27, 1973.

Facts
Kellogg Pontiac Sales Corp. was incorporated in 1937 to operate a Pontiac dealership in New York City, and, after 1955, was owned 50% by Israel Solomon, who was sole franchisee, and 50% by Fay Solomon. Through the Automobile Dealers Industrial Relations Association of New York, Kellogg for many years had collective bargaining agreements with Local 259 with respect to its service shop employees. The most recent such agreement between Kellogg and Local 259 was for a term from July 1, 1972 to June 30, 1974.
Kellogg was located in Manhattan. In or about 1970 New York City commenced a condemnation proceeding with reference to Kellogg's properties, and in March 1971 took title to the properties. Kellogg was given final notice to vacate by the end of 1972. Because of the condemnation and other reasons, Israel Solomon decided to leave the business, and allowed the franchise to expire. However, his son, Jack Solomon, an employee of Kellogg, and his son-in-law, Alan Grossman, a vice-president of Kellogg and its general manager, secured a Pontiac franchise in their names in November 1972. This franchise was for Mt. Vernon, New York, some 15 miles away from the Manhattan location, and had been operated by Persina Pontiac, whose assets Jack Solomon and Alan Grossman proceeded to buy.
The corporate entity of Kellogg Pontiac Sales Corp. continued, and the Mt. Vernon dealership was operated by that corporation. Grossman and Jack Solomon purchased Fay Solomon's shares in the corporation. Israel Solomon continued to own his 50% share of the corporation as a result of making a loan to Grossman and Jack Solomon. However, there is an agreement whereby Grossman and Jack Solomon will purchase the shares of Israel Solomon over a period of time in repayment of the loan.
It appears that Grossman and Jack Solomon purchased no tangible assets, *1046 fixtures or inventory from Kellogg's Manhattan operation although in their advertising from the Mr. Vernon location they clearly sought to carry over the goodwill of the name Kellogg.
The Mt. Vernon operation of Grossman and Jack Solomon commenced in December of 1972.
When Local 259 was apprised of the move to Mt. Vernon, in November of 1972, it demanded that Kellogg offer the Manhattan employees continued employment at the new location, and that Kellogg continue to implement its collective bargaining agreement with the union. However, when Kellogg moved to Mt. Vernon it dismissed the Manhattan Kellogg employees and hired the non-union Persina employees instead. It appears that at this time there were nine Persina employees. Twelve Kellogg employees had been dismissed from the Manhattan location.
Local 259, as representative of the Manhattan Kellogg employees who lost their jobs, petitioned for arbitration, alleging breach of its collective bargaining agreement. On June 18, 1973 Arbitrator Cohen handed down an Opinion and Award. He noted the collective bargaining contractual provisions to the effect that Local 259 was recognized as the duly accredited collective bargaining representative of Kellogg's service shop employees, and that no employees should suffer any reduction in pay or loss of any economic benefit during the term of the agreement. Arbitrator Cohen held that the contract bound the Kellogg corporate entity, which was still in existence, and did not merely bind an individual franchisee. The Arbitrator noted that the recognition clause in the contract contained no geographic limitations. The Arbitrator concluded that Kellogg had improperly avoided the continued implementation of the contract and had denied both Local 259 and the employees the rights and benefits arising out of the contract. On the question of the remedy, the Arbitrator requested the parties to recognize the realities of the situation in which the Persina personnel were in effect employed at the new location, and requested the parties to bargain over what precisely should be done. The Arbitrator therefore issued the following direction:
"(1) The collective bargaining agreement between the Employer and the Union did not terminate with the cessation of the business operation at the New York location. The Employer is obligated to continue to recognize the Union and implement the terms of the collective bargaining agreement at its current Mount Vernon location.
"(2) The Employer and the Union are directed to meet and negotiate, the questions of the employment status of both the former New York employees and the present Mount Vernon employees, their possible monetary and benefit losses and the losses incurred by the Union as a result of the Employer's cessation of recognition of the Union and the failure to implement the collective bargaining agreement from about December 1, 1972 to the present.
"(3) In the event the parties are unable to reach full agreement with respect to the remedy directed in paragraph (2), above, either party may resubmit the unresolved portion of the remedy for determination as part of this proceeding."
Kellogg had participated in the arbitration, but when the Arbitrator decided against it, Kellogg petitioned the NLRB to determine the question of union representation at its Mt. Vernon location, on the ground that the NLRB had jurisdiction under § 9 of the Labor Management Relations Act, 29 U.S.C. § 159, to determine representation questions. The NLRB accepted jurisdiction.
On October 12, 1973 Sidney Danielson, Regional Director of NLRB Region 2, issued a Decision and Direction of Election. This decision held that the Arbitrator's ruling that the Kellogg operation at Mt. Vernon was bound to the pre-existing collective bargaining agreement *1047 with Local 259 was erroneous. The Regional Director found that the employer at the Mt. Vernon location was a "completely new business entity" not bound to adopt the collective bargaining agreement between Local 259 and Kellogg. The Regional Director placed his main reliance upon the fact that the operation of an automobile dealership depended on the franchise given to an individual, which franchise was different at the Mt. Vernon location than it had been at the Manhattan location. The Regional Director held that the accoutrements of corporate structure were essentially irrelevant for the purposes of the NLRB proceeding. The decision held that the Arbitrator's conclusion that the employer at Mt. Vernon had an obligation to employ or offer employment to the Manhattan employees was at odds with NLRB principles and policies. The Regional Director declined to defer to the Arbitrator with respect to the questions of the interpretation of the collective bargaining agreement, because the Regional Director stated that the question related not merely to interpretation but to the very existence of a contract at the Mt. Vernon location. Moreover, the Regional Director held that it would be contrary to the NLRB policies to compel the Mt. Vernon employees (the Persina employees) to accept a union which they had not elected. For these reasons, the Regional Director ordered an election at the Mt. Vernon location.
On November 8, 1973 the full NLRB denied review.
On November 29, 1973 Regional Director Danielson issued a Supplemental Decision and Certification of Results noting that an election had been held at the Mt. Vernon location on November 20, 1973. Sixteen votes were cast, 4 for Local 259 and 12 against. For this reason the Regional Director refused to certify Local 259 as the collective bargaining representative at the Mt. Vernon location.
Further proceedings were thereafter held before Arbitrator Cohen. On December 27, 1973 the Arbitrator handed down a Supplemental Opinion and Award. Arbitrator Cohen refused to accept the argument of Kellogg that there should be no further proceedings in view of the NLRB action. The Arbitrator stated:
"I have considered the Employer's arguments with respect to the propriety of awarding a remedy in the arbitration proceeding which may be inconsistent with the decision of the N. L.R.B.'s Regional Director. I note that the issue presented in the N.L.R. B. case only involved the status of the contract as a bar to the holding of an election among the present Mount Vernon employees. In this proceeding before me, the issue concerns the rights of the employees and the Union which flow from a contract, admittedly valid when it was entered into and not contested at any time by the Employer until the location of the business was changed to Mount Vernon. Further, unlike other situations where there is a rival union with a contract and there are conflicting claims, here there is neither a rival union nor a conflicting contract present to confuse the situation. It is therefore my opinion that the decision in the N.L. R.B. proceeding, whether ultimately held to be correct or incorrect, should not prejudice the rights of the New York employees and the Union which are derived from that contract and which by its own terms is still in effect until June 30, 1974."
Arbitrator Cohen recognized that Paragraph (1) of his June 18, 1973 awardto the effect that Local 259 should represent the employees at the Mt. Vernon locationwas in direct conflict with the NLRB decision, and held that no relief should be awarded under that paragraph.
However, Arbitrator Cohen proceeded to grant relief by way of reinstatement and damages, which he believed did not *1048 conflict with the NLRB decision. He directed reinstatement at Mt. Vernon of eight employees from the former Manhattan location who wished reinstatement, and granted damages to six of these employees based upon wage losses from the time of their dismissal from the Kellogg Manhattan operation until the date of the Supplemental Opinion and AwardDecember 27, 1973. The Arbitrator also awarded certain amounts to Local 259 pension and other funds based upon contractually required contributions through the end of December 1973. The specific awards on these points were:
"2(a) The Employer shall reinstate the following individuals to their jobs:
 Eduardo Alejandro
 Antonio DeJesus
 Salvatore Licari
 Donald Terkovich
 Anthony Romano
 Sheldon Latzen
 Andre Chenet
 Joseph Calise
"2(b) The Employer shall pay to the Local 259 Pension Fund $4,368.00 for contractually required contributions through the end of December 1973.
"2(c) The Employer shall pay to the Local 259 Health and Welfare Fund $6,818.90 for contractually required contributions through the end of December 1973.
"2(d) The Employer shall pay to the following individuals the sum listed adjacent to their names for earnings lost from the date of their dismissals to the date of this Award.

 Salvatore Licari $1,635.60
 Donald Tercovich 6,488.85
 Anthony Romano 5,026.08
 Sheldon Latzen 7,175.72
 Andre Chenet 1,120.68
 Joseph Calise 6,322.68"

In the present proceeding, petitioner Local 259 no longer seeks enforcement of Paragraph (1) of the Arbitrator's June 18, 1973 award. In other words, Local 259 does not seek to have a declaration that Local 259 is the collective bargaining representative for the Mt. Vernon location or that the wages and other terms of the collective bargaining agreement are to apply at that location. The rejection of such relief would, of course, necessarily flow from the fact that the collective bargaining agreement expired by its own terms on June 30, 1974. However, Local 259 also apparently concedes that Paragraph (1) would in any event be in conflict with the NLRB decision and is for that reason unenforceable.
As to Paragraphs 2(a), 2(b), 2(c) and 2(d) of the Arbitrator's December 27, 1973 award, Local 259 maintains that the relief granted therein by the Arbitrator does not conflict with the NLRB decision and that these paragraphs of the Arbitrator's award should be enforced.

Conclusions of Law
The National Labor Relations Act confers upon the NLRB jurisdiction over questions relating to union representation and jurisdiction. 29 U.S.C. § 159. The determination of the NLRB on such questions is reviewable in a federal court of appeals. 29 U.S.C. § 160. On the other hand, factual situations solely involving interpretation of collective bargaining contractsi. e., questions regarding wages and other terms and conditions of employmentare not within the jurisdiction of the NLRB, but are normally handled by an arbitrator appointed pursuant to the collective bargaining agreement. The federal district courts have jurisdiction over actions to enforce arbitration agreements. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
It may be that representation or jurisdictional questions depend at least in part on interpretation of collective bargaining *1049 agreement terms. The Supreme Court has held that in such a case it is permissible to seek arbitration of the dispute in the first instance. The Court has held that if an NLRB ruling on the dispute is sought following an arbitration award, the NLRB will rule on that portion of the dispute within the NLRB's jurisdiction, but will show "deference to the arbitral award, provided the procedure was a fair one and the results were not repugnant to" the federal labor law. Carey v. Westinghouse Corp., 375 U.S. 261, 270-71, 84 S.Ct. 401, 408, 11 L.Ed.2d 320 (1964).
The Court of Appeals for this Circuit has dealt with the problem of resolving conflicts between an NLRB decision and an arbitrator's award, where both grow out of the same labor dispute. Luckenbach Overseas Corp. v. Curran, 398 F.2d 403 (2d Cir. 1968). There the NMU had a collective bargaining agreement covering seamen employed on Luckenbach's vessels. One of such vessels was sold to Overseas which had a collective bargaining agreement with the SIU. Overseas discharged Luckenbach's NMU crew and replaced them with members of the SIU. The NMU filed unfair labor practice charges with the NLRB, which held that the discharge of the NMU members did not violate the statute. Three days before the NLRB decision, the NMU initiated an arbitration proceeding. Luckenbach sued to obtain a stay of this arbitration. Overseas argued in the Court of Appeals that there were no remaining rights under the collective bargaining agreement susceptible of arbitration, in view of the fact that the NLRB had ruled that the NMU and its members could properly be ousted by the vessel's transferee in view of the transferee's collective bargaining agreement with a rival union. The Court of Appeals held that there was, at least potentially, an area where an arbitrator might act in a way not in conflict with the NLRB decision. The Court of Appeals stated (398 F.2d at 405-6):
"The thrust of Luckenbach's argument is that arbitration in this case is precluded by the facts found and policies expressed by the Regional Director when he decided not to issue the unfair labor practice complaint sought by NMU. But that decision and its affirmance by the Board's General Counsel, do not foreclose the possibility that NMU may have rights and remedies under the collective bargaining agreement. Different issues are presented in each instance and it is conceivable, as the district judge stated, that the arbitrator could fashion a remedy under the contract which would not conflict with Board policy or the Regional Director's decision. These questions, arising out of the collective bargaining agreement, are proper subjects for arbitration, and if the decision of the arbitrator conflicts with Board policies or decisions, it is subject to later review and correction in the courts. To make awards in damages to NMU for breaches of the contract would not subvert the Board policy that a newly acquired vessel is subject to the collective bargaining agreement of the transferee fleet. They would, of course, be allowed only when the arbitrator could properly find that they were based on rights provided for in the collective bargaining agreement." [footnote omitted]
Applying the Luckenbach ruling to the present case, the question before me is whether those phases of the Arbitrator's award which Local 259 seeks to enforcei. e., reinstatement of the Manhattan employees and damages for lost wages and benefit paymentsare or are not in conflict with the NLRB decision. I note here that, with regard to reinstatement, the expiration of the collective bargaining agreement as of June 30, 1974 would in and of itself prevent any reinstatement now, although this particular timing problem did not exist at the time the arbitrator made his award of December 27, 1973. However, in order to explore fully the legal questions involved, I am laying aside for the moment the matter of mootness in respect to the question of reinstatement, and *1050 will examine the issue of whether reinstatement would be in conflict with the NLRB ruling.
Local 259 contends that reinstatement is not in conflict with the NLRB decision. The union appears to argue that the NLRB dealt solely with the question of representation, and that its ruling that an election should be held does not determine which employees are to be the ones who vote in such election. Local 259's view is that the NLRB did not rule that the Persina employees rather than the former Manhattan Kellogg employees were required to be the ones hired at the Mt. Vernon location. Local 259 notes that there was and is no collective bargaining agreement with a rival union at the Mt. Vernon location.
I cannot agree with this argument of Local 259. It is plain that the NLRB decision held that the former Kellogg employees at the Manhattan location had no right to employment at the Mt. Vernon location; that Kellogg had a right to employ the Persina employees; and that the election was necessary to give the latter employees the franchise regarding union representation.
The NLRB has held an election in which the present Mt. Vernon employees have rejected representation by Local 259. It would be completely inconsistent with this remedy to now install the Local 259 members, who were former employees at the Manhattan location, and who would obviously bring their union with them to Mt. Vernon.
Local 259 next argues that, if the NLRB decision can be construed as barring reinstatement of the Manhattan employees, this phase of the NLRB ruling was erroneous. The short answer to this argument is that no one has sought review of the NLRB decision by the method prescribed by the statutei. e., in a proceeding in the court of appeals. Therefore the NLRB holding stands, and cannot be challenged in the present district court proceeding.
My conclusion therefore is that reinstatement of the former Manhattan employees cannot be granted, not only because the collective bargaining agreement has expired, but also because such a remedy would be in direct conflict with the remedy afforded by the NLRB.
The next question is whether the Arbitrator's award of damages in the form of lost wages and fund payments can be sustained as not in conflict with the NLRB decision. The Arbitrator found that six of the former employees of the Manhattan location had submitted adequate evidence that following their dismissal they earned lower wages than they would have earned from Kellogg at the rates under the collective bargaining agreement. The Arbitrator calculated such losses from the time of the dismissals until the time of the December 27, 1973 awardthe theory being that as of the time of such award these employees would be reinstated in their employment by Kellogg.
With respect to payments contractually due to the various union funds, the Arbitrator found that certain amounts were owing based upon an average number of union employees at the Manhattan location. Again, these amounts were calculated for a period terminating with the date of the award.
As to the question of whether these awards by the Arbitrator are in conflict with the NLRB remedy, it is clear that the NLRB did not specifically rule that such damages could not be recovered. The problem arises, however, because the NLRB's rationale for its representational ruling was in part that the collective bargaining agreement was not binding upon Kellogg in the new location, because Kellogg became a new and separate "business entity". The Arbitrator, on the other hand, based his award of damages upon the proposition that the Kellogg corporate entity continued to exist in the new location at Mt. Vernon and was bound by the collective bargaining agreement as a matter of contract *1051 and corporate law. The Arbitrator concluded from this that Local 259 and the Manhattan employees had rights both to the reinstatement of the employees and reimbursement for lost wages and benefits.
The difficulty comes, therefore, not because the Arbitrator's award of damages to the former Manhattan employees would be in and of itself inconsistent with the NLRB direction of an election to be held for the present Mt. Vernon employees, but because the theories underlying these two remedies are in conflict. In my view, the proper and practical way to resolve this matter is to focus on an accommodation of results and remedies, rather than allowing the matter to be controlled by the conflict in theories.
I hold that the portions of the Arbitrator's December 27, 1973 award granting damages should be upheld and enforced.
In this regard, I rely upon the language from the Luckenbach opinion quoted earlier, indicating that it is possible in a situation such as the present one for an arbitrator to fashion a remedy under the collective bargaining agreement "which would not conflict with [NLRB] Board policy or the Regional Director's decision". The court specifically expressed the view that an award of damages to terminated employees does not necessarily conflict with an NLRB decision denying such employees continued employment or reinstatement.
In my view, the award of damages in the present case to the former Manhattan employees and to the Local 259 funds does not in any degree subvert the NLRB policy announced in the October 12, 1973 decision, to the effect that the Persina employees are entitled to employment at the Mt. Vernon location and are also entitled to an independent franchise on the question of union representation.
If that portion of the Arbitrator's award relating to damages is not sustained, the result will be to wipe out completely the rights of the former Manhattan employees under the collective bargaining agreement as duly determined in an arbitration proceeding. This result would be at odds with what has been held regarding the respective domains of the arbitrator and the NLRB  that is, that an arbitrator has primary authority to interpret collective bargaining agreements on questions of employment rights, wages, etc., and that the NLRB may tread upon this authority only as far as necessary to rule upon matters within the NLRB's jurisdiction, such as representation and unfair labor practices. See NLRB v. Strong, 393 U. S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969).
The NLRB, in the present action, does not actually argue against the award of damages. Kellogg argues against such an award. However, the minutes of the NLRB proceedings show that when Kellogg was before the NLRB, Kellogg expressly conceded that the NLRB would have no concern regarding monetary damages.
With respect to the amounts of the damage awards, as already noted, the Arbitrator calculated such damages only with respect to the period through the end of December 27, 1973. Such damages will need to be fixed for the further period of the collective bargaining agreement  through June 30, 1974. In the case of payments due to union funds, this is probably a simple matter of mathematical calculation. With respect to the loss of wages to individual employees, the method used by Arbitrator Cohen in his second decision and award should be adopted and applied to the additional period from December 27, 1973 through June 30, 1974. Hopefully this can all be stipulated without the need for further hearing or remand to the Arbitrator. In this regard, the parties are directed to confer and make proposals to the court.

Conclusion
For the foregoing reasons, the motions of Kellogg and the NLRB to dismiss *1052 the petition, or in the alternative for summary judgment, are denied.
The motion of Local 259 to confirm the arbitration awards is denied as to Paragraph (1) of the award of June 18, 1973 and Paragraph 2(a) of the award of December 27, 1973. The motion to confirm is granted as to Paragraphs 2(b), 2(c) and 2(d) of the award of December 27, 1973, subject to fixing the precise amount of damages as indicated above.[1]
Settle order.
NOTES
[1] The issues as to Paragraphs (2) and (3) of the June 18, 1973 award are moot.