CENTRAL MOTOR EXPRESS,
INC., Plaintiff,

v.

GENERAL DRIVERS, WAREHOUSE-
MEN AND HELPERS, LOCAL
UNION NO. 89, Defendant.

Civ. A. No. C 75–0034 L(A).

United States District Court,
W. D. Kentucky,
Louisville Division.

June 16, 1975.

W. Bruce Baird, Matthew R. Westfall, Joseph H. Terry, Middleton, Reutlinger & Baird, Louisville, Ky., Phil Allen Bertram, Campbellsville, Ky., for plaintiff.

Ralph H. Logan, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

ALLEN, District Judge.

This action is submitted to the Court on the motions of the defendant to dissolve the temporary restraining order, to dismiss the complaint and to enter summary judgment on an award made by the Joint Committee sitting in arbitration. There is also pending the motion of 27 employees of the plaintiff located in Campbellsville, Kentucky who seek to intervene in this action. The parties have exhaustively briefed the questions raised by the motions and they have also presented oral arguments to the Court.

On January 31, 1975, plaintiff filed this action, pursuant to 29 U.S.C. § 185.

The complaint alleged that an unauthorized work stoppage and picketing by the defendant in violation of a nonstrike clause contained in Article 4 of the Collective Bargaining Agreement by the named parties had occurred. Injunctive relief was sought prohibiting the continuation of the work stoppage and the picketing of plaintiff's Louisville terminal by the union. On February 3, 1975, the Court entered its temporary restraining order enjoining the strike and picketing, conditioned upon plaintiff submitting to the grievance procedure set out in Article 8 of the Collective Bargaining Agreement in regards to any controversy as to the illegal work stoppage and picketing at the Louisville terminal.

On March 21, 1975, the Court entered its order continuing in effect the temporary restraining order of February 3rd until a final and binding adjudication of two grievances was effected. The order was agreed to by both sides and provided that either party could apply for enforcement of any final decision reached by the applicable arbitration authorities.

The first of the two grievances referred to in the March 21st order was filed by the defendant against the plaintiff contending that the plaintiff had violated Article 2, Section 3 of the Collective Bargaining Agreement and requesting a ruling as to the duty to be covered by the Joint Area Committee for city drivers, dock men and over-the-road drivers, some of whom were owner-operators.

The grievance filed by the defendant further specified that a majority of the employers of the plaintiff at its Campbellsville, Kentucky terminal had signed authorization cards to Local 89. The grievance alleged also that Article 2, Section 3, was in effect on January 20, 1975 and that on April 3, 1974 the defendant had signed an agreement for two over-the-road drivers at Campbellsville, who drive from Campbellsville to Louisville only.

Plaintiff's grievance was filed against the acts of Local 89, and striking and

picketing its Louisville terminal from January 27, 1970 and thereafter. Damages were requested for the alleged violation of the union.

The Joint Committee which, by terms of the Collective Bargaining Agreement, has the final say in grievances between the parties resolved the issues in favor of the defendant. The ruling on the first grievance states that the company has violated Article 2, Section 3 by failing to recognize the union as collective bargaining agent for the local and over-the-road drivers employed by it at Campbellsville.

The decision as to the grievance filed by the plaintiff simply recites that the company has not substantiated the alleged violation of Article 45 or other Articles, and its claim is denied.

Plaintiff, on March 7, 1975, filed representation petitions with the National Labor Relations Board for separate bargaining arrangements of local intrastate drivers and over-the-road interstate drivers. These petitions are still pending before the N.L.R.B.

On April 23, 1975, 27 of the 33 employees of the plaintiff at Campbellsville moved the Court to intervene. Each of the potential intervenors signed a statement entitled "To Whom It May Concern" reciting that he did not want the defendant to represent him and that when he signed a card for the union, facts were represented which were untrue.

Ordinarily when the grievance procedures have been exhausted the Court has nothing left to do but enforce the provisions of the grievance award. See *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *United Steelworkers of America v. American Manufacturing Company,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). However, plaintiff has raised two objections to enforcement here which warrant serious consideration.

The first objection is based on the theory that the Grievance Committee, with reference to the first grievance, has failed to enter an award which is capable of being enforced. The first case relied upon by plaintiff is *United Steelworkers v. Timken Roller Bearing Company,* 324 F.2d 738 (6th Cir. 1963) which, on analysis, reveals that the arbitrator's award was ambiguous and, therefore, the action was remanded to him in order that he might make a decision clarifying the manner and scope of his original award. That case is not applicable here, since the decision of the Committee is not ambiguous.

However, in *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association,* 389 U.S. 64, 67, 88 S.Ct. 201, 203, 19 L.Ed.2d 236, 240 (1967), the Supreme Court held that the arbitrator's award, which is set out herein below, contains only an abstract conclusion of law and not an operative command capable of enforcement.

"The contention of the Employer, the Philadelphia Marine Trade Association, is hereby sustained and it is the Arbitrator's determination that Section 10(6) of the Memorandum of Settlement dated February 11, 1965, providing gangs 'ordered for an 8 AM start Monday through Friday can be set back at 7:30 AM on the day of work to commence at 1 PM, at which time a 4 hour guarantee shall apply. A 1 hour guarantee shall apply for the morning period unless employed during the morning period,' may be invoked by the Employer without qualification.

"The contention of the Union, the International Longshoremen's Association, Local No. 1291, that Section 10(6) of the Memorandum of Settlement dated February 11, 1965, referred to above, can only be invoked by the Employer because of non-arrival of a vessel in port, is denied."

In *Hanford Atomic Metal Trades Council v. General Electric Company*, 353 F.2d 302 (9th Cir. 1966), the question was whether or not the original arbitration award was ambiguous and needed clarification. As the Court has previously noted, the opinion of the Joint Committee is not ambiguous, but the further observation must be made that it does not prescribe the remedy for the violation found by it to have been committed by the plaintiff. The decision, while cryptic, however, seems to meet the requirement of sufficient clarity to be enforcible and fulfill the requirements of the mandatory grievance procedures contained in the Collective Bargaining Agreement. See *Boire v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 479 F.2d 778 (5th Cir. 1973) at p. 783, and also *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 353 F.Supp. 869 (M.D.N.C. 1972). Even if this Court is in error in this finding, it would be a relatively simple matter to remand the award to the Joint Committee for further amplification and specific directions to the parties.

The second noteworthy point made by the plaintiff is that no order enforcing an award of an arbitrator or a grievance committee should be entered while there is pending before the N.L.R.B. matters involving representation of employees. The plaintiff relies primarily on the case of *Boire v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, supra.* In that case, Pilot Freight Carriers, Inc. was the signatory to a nation-wide collective bargaining agreement with the appellant union. The bargaining agreement provided for representation by the union, except where the employees were members of another union or had not designated a union as their collective bargaining agent. The agreement also provided that it applied to all newly established or acquired terminals, and as in the case at bar, provided for arbitration of all contractual disputes, with all awards being final and binding.

When Pilot extended its operations to Florida, it operated its terminals there without union representation for 18 months. On April 7, 1972 the union filed a grievance claiming that it was entitled to represent the Florida employees under the accretion provisions of the collective bargaining agreement. On July 22nd an interlocutory committee decided in favor of the union and on August 21st the final arbitrator rendered its decision in favor of the union.

While the grievance proceedings were going on, the union commenced strike activity which continued until July 28, 1972, at which time it was enjoined by a federal district court. On September 8th the North Carolina district court dissolved its July 28th injunction, finding that the Committee's award was clear enough to be enforcible. The decision is found in 353 F.Supp. 869 (M.D.N.C.1972). The court explicitly refused to decide whether the Committee's award was valid under the N.L.R. Act and deferred to the N.L.R.B. on that issue, taking notice of the unfair labor practice proceedings pending before the Board at that time. It had filed before the Board, on May 24, 1972 and July 29, 1973, a union clarification proceeding and an unfair labor practice proceeding in an attempt to have the Board exclude the Pilot employees in Florida from the defendant union and to hold that the union's attempts to gain representation were in violation of 8(b)1(a) of N.L.R.A.

After the federal injunction was dissolved, the Teamsters notified Pilot that it would resume strike activity unless Pilot complied with the grievance award. N.L.R.B. then promptly sought an injunction to prohibit the Teamsters from taking any action to enforce the arbitration award, and both the district court and the circuit court held that an injunction was proper in those circumstances.

While the court's opinion is lengthy, it may be summarized as holding that the final binding effect of arbitration is not fully applicable where the questions before the arbitrator are almost wholly representational and potentially subject

to the superior authority of the Board. Where the central problem is one of the unit's appropriateness, the arbitrator is powerless to give a decision that will be final and binding on the parties. The Board will only defer to the arbitrator's decision if it is consistent with Board standards, and while the arbitrator can give a final interpretation of the contract in representation matters, it is clear that the parties are not at liberty to determine the appropriate unit. See *Boire v. International Brotherhood of Teamsters, etc.*, 479 F.2d at p. 802.

While *Boire* is authority for the proposition that the Regional Director of the N.L.R.B. may obtain injunctive relief against a union in order to protect the jurisdiction of the Board in matters as to which an unfair labor practice has been filed by an employer concerning the appropriateness of bargaining units, and the question of whether or not the union is the proper bargaining agent for employees under the doctrine of accretion, it specifically refers to the holding of the district court for the Middle District of North Carolina in the case of *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters, etc., supra*, where the court held that it should dissolve a preliminary injunction granted to the employer prohibiting a strike, inasmuch as the parties had submitted the matters at issue to the grievance procedures and a final grievance award had been entered.

The only significant differences between *Pilot Freight Carriers, Inc.* and the case at bar are these:

Here the union has secured the cards authorizing it to act as bargaining agent for the employees at Campbellsville, whereas in *Pilot Freight Carriers, Inc.*, the union contended that by virtue of the terms of the collective bargaining agreement the new employees of the trucking company automatically became members of the union under the doctrine of accretion.

The second difference is that there was no motion to intervene filed in *Pilot Freight Carriers, Inc.*, whereas there is such a motion here.

Harmonizing *Pilot Freight Carriers, Inc.* and *Boire*, as well as *Boys Markets, Inc. v. Retail Clerks Union, Local 770, supra*, requires that the Court reach the conclusion that as between plaintiff and defendant, plaintiff is no longer entitled to injunctive relief, since the general rule is that labor injunctions are rarely granted, with narrow exceptions. See *Boys Markets, Inc. v. Retail Clerks Union, Local 770, supra*. *Boys Markets* authorizes injunctive relief against a union in a suit brought by a corporation where the parties in a collective bargaining agreement have consented to arbitration as a means of determining their disputes concerning the interpretation of the collective bargaining agreement. The rationale for the granting of the injunctive relief to the corporation is that it has agreed to be bound by the arbitration and grievance proceedings, and it cannot come into court and ask for an injunction prohibiting a strike on the theory that it will abide by the arbitrator's decision and then, when that decision has been reached, attempt to repudiate it. See *Pilot Freight Car, Inc. v. International Brotherhood of Teamsters, etc., supra*.

The Court realizes also that, as a general rule, it must issue injunctive relief to a party who has secured an award of a grievance committee or an arbitrator. See *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Company, Inc.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

However, it is recognized by this Court that the Director of the N.L.R.B. could, under the doctrine of *Boire*, intervene in this action and might be entitled to injunctive relief if he chose to intervene. If he did so, the result would be that the Grievance Committee's award would not be enforcible, unless the N.L.R.B. subsequently held that it should be enforced.

The Court notes that in *Boire*, after the North Carolina court in *Pilot* entered its decision on September 8, 1972, dissolving the preliminary injunction, the N.L.R.B. on September 19, 1972, filed its motion for a preliminary injunc-

tion in the district court in Florida, thereby indicating that on such occasion, the N.L.R.B. does act with alacrity and promptness. While the Court believes that the preliminary injunction should be dissolved, it does not believe that the motion for summary judgment or the motion to dismiss filed by the defendant should be sustained. The reason for not sustaining these motions is founded on the principle, as stated in *Boire*, that where an award of a grievance committee is cryptic, and where the rights of employees to choose their collective bargaining representative are at issue, then the Board has authority to exercise and enter awards which are in conflict with the award of the grievance committee and which supersedes such awards. See *Boire*, at p. 795.

The Court, of course, recognizes that on occasions the Board has seen fit to defer to arbitration awards concerning representational and unit determination matters. See *Raley's Inc.*, 143 NLRB 256 (1963). Certainly this Court cannot anticipate what action the Board will take in these matters. It would seem appropriate to overrule the motion to dismiss and the motion for summary judgment, insofar as it pertains to the grievance filed by the defendant against the plaintiff, and to sustain the motion for summary judgment as to the grievance filed by the plaintiff against the defendant, with the thought in mind that if the Board does not intervene in this action within a reasonable period of time to protect its authority, the defendant may again renew its motions.

We hold finally that the 27 employees who seek to intervene here have a substantial interest in the outcome of this action and that their motion to intervene should be sustained. See *Culinary Workers and Bartenders Union, Local 814 v. Salatich*, 318 F.Supp. 1047 (C.D.Cal.1970).

An order in accordance with this opinion has been entered this day.