GENERAL WAREHOUSEMEN AND HELPERS LOCAL 767, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff-Appellant,

v.

STANDARD BRANDS, INC.,
Defendant-Appellee.

GENERAL WAREHOUSEMEN AND HELPERS, LOCAL 767, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiffs-Appellants-Cross Appellees,

v.

STANDARD BRANDS, INC., Defendant-Appellee-Cross Appellant.

Nos. 75–3797, 76–1579.

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1977.

Rehearing En Banc Granted
Dec. 15, 1977.

James L. Hicks, Jr., Dallas, Tex., for General Warehousemen and Helpers Local 767.

William L. Keller, Allen Butler, William F. Carroll, Dallas, Tex., for Standard Brands, Inc.

Before TUTTLE, WISDOM and COLEMAN, Circuit Judges.

TUTTLE, Circuit Judge:

This case requires us to sound the treacherous waters in which judicial power and NLRB authority overlap and sometimes conflict. Appellant, a Teamsters local, seeks to enforce an arbitration award in its favor. Ordinarily, such awards are readily enforced. But the district court held that this award conflicted with a prior NLRB decision and hence could not be ordered into effect. The Teamsters have appealed; Standard Brands, the employer, has cross-appealed, asserting additional bases for refusing to enforce the award.

## I. THE HISTORY OF THE CASE

Our perception of this case is inescapably—and properly—influenced by the facts. Certain background points are not controversial. On October 3, 1975, Standard Brands permanently closed its Dallas margarine plant, which it had operated since as early as 1943. In the early 1970s, Standard had begun looking for a new plant site in the Dallas vicinity, and in 1973 it selected a tract of land in Denison, Texas—some 75 miles from Dallas. According to the arbitrator, the new plant went into operation in late October 1974 and formally opened on November 1, 1974.

On the day the plant opened, the Teamsters, who represented the employees of the Dallas plant, filed a grievance which asserted that the operation of the new plant would result in the closing of the old one, and sought to protect the contractual rights of the Dallas employees in that event. The arbitrator did not reach a decision in the case until shortly after the company announced the closing of the Dallas plant, an event which surely influenced his view of the case. He concluded that the Company had

> discriminated against the Dallas employees because of their Teamsters Union membership and activities. . . . It was undisputed that the Company intended to operate Denison non-union, and it especially tried to operate it without the Teamsters Union and its contract.

This conduct violated a non-discrimination clause of the Contract (Part I, Section 14(e)). In the arbitrator's judgment, the company's conduct also violated the Dallas employees' right to reasonable notice and an opportunity to fill jobs at the Denison plant when their work was transferred there (Part I, Section 13(e) of the Contract), and failed to comport with the contractual recognition of the Teamsters as the Dallas bargaining agent (Part VIII, Section 1).

These findings convinced the arbitrator of the necessity for a thoroughgoing remedy. His award had several features: (1) Dallas employees were ensured a right to transfer to certain jobs in Denison; (2) the transferees to Denison were given "superseniority," based on the first day of Denison operations rather than the first day of their work in the new plant; (3) the former Dallas workers' "compensation and other benefits" at Denison would conform to the Dallas contract.[1] This third element, the introduction of the Dallas contract terms to govern Denison work, was not to be permanent. The arbitrator believed that "the addition of these several manufacturing lines[2] and newly transferred employees will materially alter the bargaining unit at Denison and . . . eventually the NLRB will have to determine the resulting questions concerning representation." The Dallas contract would apply only until that time.

Standard Brands discerns a conflict between this award and an NLRB certification of a different union, the International Association of Machinists, as the exclusive bargaining agent of the Denison employees. The IAM's organizing campaign had begun as soon as the new plant opened. Within a short time, on December 6, 1974, the IAM was able to file an election petition with the NLRB. The Teamsters were permitted a limited form of intervention in the proceedings on this petition, but the Dallas employees were not allowed to vote in the Denison election. The IAM won the election by a vote of 19 to 4, and, on appeal, the NLRB confirmed the resulting certification of the IAM. In short order, the IAM and Standard Brands reached agreement on a contract of which the arbitrator wrote,

> "The wage rates in that agreement appear to be significantly lower than comparable rates in the Dallas Teamster agreement, although I make no absolute finding to that effect."

Although the Teamsters later sought to reopen the representational proceedings on the basis of the arbitrator's findings and award, the NLRB rejected this motion.

█ The district court concluded that the award did conflict with the NLRB certification, and therefore could not be enforced. The court's first action was to deny the union a preliminary injunction enforcing

---

1. The arbitrator's award can be read to apply the Dallas contract terms even to Denison employees who never worked at Dallas, but who perform work once carried out there. If the arbitrator meant to order any such changes in the terms of non-Dallas employees' work, the Teamsters have not sought to enforce this aspect of his award.

2. There is some suggestion in the arbitrator's decision that he meant to order the company to begin production in the Denison plant of certain types of margarine, similar to margarine formerly made in Dallas. The parties do not discuss the propriety of such an order, and we do not consider it.

the award.[3] At that time, it was the court's understanding that the company had agreed to comply with all portions of the award except the provision applying the Dallas contract at Denison. Similarly, the district court's final conclusions of law discuss only the impropriety of the arbitrator's attempt to specify wages and working conditions at the Denison plant. It had become clear, however, at the subsequent hearing on the union's request for a permanent injunction, that the company was also resisting enforcement of the "superseniority" aspect of the award. Moreover, although the company did offer to let Dallas employees transfer to Denison, it did not offer to pay them according to the Dallas contract. Since the arbitrator's award in effect required the latter, more generous offer, the transfer issue was unresolved as well. The district judge suggested at the permanent injunction hearing that the seniority and transfer issues would only become pressing if our Court reversed on the question of wages. We conclude that all of these elements of the award are still before us.[4]

## II. THE COURTS AND THE NLRB: CONFLICT OR OVERLAP

The district court refused to enforce the arbitrator's award on the theory that it conflicted with an NLRB certification. The NLRB, however, had not and still has not declared enforcement of the award to be an unfair labor practice. Thus, the district court of necessity reached its own conclusion about the significance of the certification of the IAM. The principal constraint against such judicial interpretation of the Board's actions is the well-established principle that the Board is the authority primarily responsible for the administration of the National Labor Relations Act. In its broadest terms, this requirement has been seen as precluding original judicial proceedings wherever the conduct under scrutiny is arguably prohibited or permitted by the NLRA. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

This principle, of course, does not mean that the NLRB defines the entire system of law regulating labor relations. Labor relations are commonly also governed by a contract or collective bargaining agreement, and enforcement of these agreements can be carried out by the federal courts under § 301 of the NLRA, 29 U.S.C.A. § 185(a). In particular, courts have the authority to enforce awards entered in contractual arbitration proceedings, even when the conduct under scrutiny could also be the subject of an unfair labor practice charge before the National Labor Relations Board. *See Smith v. Evening News Association,* 371 U.S. 195, 197–98, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 101 n. 9, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). The Supreme Court has given its imprimatur to judicial action under section 301 even in the context of an inter-union "jurisdictional" dispute, which—like the present case—perhaps involved the issue of which union should represent a workforce, *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964).[5]

3. The union appealed the denial of the preliminary injunction, in No. 75–3796, but concedes that this appeal is now moot.

4. Standard Brands contends that the arbitrator's award is itself now moot. The arbitrator expressly indicated that his award of Dallas compensation and other benefits would be effective only until the NLRB dealt with the representational issues generated by his award, and, in Standard Brands' view, the NLRB resolved these questions by adhering to its certification of the IAM even after the arbitrator's opinion had been submitted for its consideration. But the Teamsters correctly point out that the arbitrator contemplated a resolution of representational questions which would arise after compliance with this award. Since compliance with the award has not yet been obtained, mootness is also absent.

5. Standard Brands contends that the dispute before us properly falls within the exclusive or primary jurisdiction of the NLRB. We reject this contention. While there may be section 301 cases where courts should refrain from taking jurisdiction, *see Smith v. Evening News Association, supra* 371 U.S. at 197–98, 83 S.Ct. 267; *cf. United Steelworkers v. American Int'l Aluminum Corp.,* 334 F.2d 147, 153 (5th Cir. 1964), *cert. denied,* 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611 (1965), we believe that respect for the NLRB's primary responsibility compels, rather than precludes, decision of this case.

So long as the courts exercise this broad power under section 301, they may be asked to enforce arbitration decisions, presumably justified as far as the parties' contract is concerned, which violate the National Labor Relations Act. It is clear that a court will not enforce an arbitral decision that conflicts with an NLRB decision. *See Carey, supra,* at 272, 84 S.Ct. 401; *New Orleans Typographical Union v. NLRB,* 368 F.2d 755, 767 (5th Cir. 1966). Similarly, courts have declared that a conflict between the promises of a contract and the demands of a statute would preclude ordering arbitration under the contract or enforcement of an arbitration award. *See United Steelworkers v. United States Gypsum Co.,* 492 F.2d 713, 734 (5th Cir. 1974) (claimed violation of 29 U.S.C. § 186(a)); *Associated Milk Dealers, Inc. v. Milk Drivers Local 753,* 422 F.2d 546, 553 (7th Cir. 1970) (arbitration would not be ordered if clause to be interpreted by arbitrator violated antitrust laws); *Nursing Home Union Local 1115 v. Hialeah Convalescent Home,* 348 F.Supp. 405, 411 (S.D.Fla.1972) (inescapable conflict with national wage-price control policy would be bar to arbitration). *Cf. Todd Shipyards Corp. v. Marine Workers Local 39,* 344 F.2d 107 (2d Cir. 1965) (finding § 301 jurisdiction over employer's suit for declaratory judgment that contract clause violated NLRA, and for injunction against arbitration; injunction denied).

In the case before us, however, there is no facial, indisputable conflict between the arbitrator's award and NLRB action. The NLRB has certified the IAM as the representative of the Denison employees. The arbitrator's award manifests his effort not to create a conflict with this certification. He commented that "The representational egg [at the Denison plant] has been scrambled . . . and it is not my province to unscramble it." (R. 257). Moreover, his provision for compensation and other benefits in accordance with the Dallas contract expressly was to run only until the NLRB dealt with the representational issues generated by his award.

Moreover, the arbitrator's decision has passed one test before the NLRB. Standard Brands, in partial compliance with the award, permitted one Dallas employee to transfer to Denison with "superseniority." On January 20, 1976, the IAM filed an unfair labor practice charge with the NLRB because one of the Denison employees had been "bumped" by this Dallas transferee. The Teamsters intervened. The Machinists, in part to avoid giving the Teamsters yet another opportunity to attack the Machinists' certification, sought to withdraw the charge.

The NLRB Division of Advice concluded that the Machinists should be permitted to withdraw the charge. One basis for the Division of Advice's reaction was the Machinists' desire to drop the matter. But the Division also commented that "the Employer's actions in transferring a Dallas employee to Dennison [sic] and applying Dallas seniority to him were considered to have been in compliance with, and, therefore, privileged by the arbitration award. . . . [I]t cannot be said that this arbitral award, as modified, unlawfully interferes with the Section 9(a) rights of the Machinists in Denison." Standard Brands, Inc., 1976–77 CCH NLRB ¶ 20,020 at p. 32,030.

The same NLRB memorandum, however, appears to question the propriety of the award's extension of Dallas contract terms to Denison. The memorandum only approved of the award "as modified"—an apparent reference to the decision by the district court not to enforce the application of the Teamster contract at Denison. Moreover, the Division commented that

"If the Circuit Court is being asked by the Teamsters to apply other provisions of the Teamster contract to the Dennison employees so that the Machinists' certification rights would be undermined, the Machinists may wish to seek Board intervention. Such a request would be forwarded to the Division of Litigation." *Id.* at n. 8.

Had the Board appeared in our case, its views would have received careful consideration. In *Boire v. International Brotherhood of Teamsters,* 479 F.2d 778 (5th Cir. 1973), we affirmed the grant of an NLRB request for a temporary injunction against any union efforts to secure compliance with an arbitrator's award. We indicated there that such requests should be granted so long as the legal theories advanced to demonstrate the presence of unfair labor practices are not insubstantial or frivolous. *Id.* at 792.

But in *Boire* the party seeking the injunction was the NLRB itself. Unfair labor practice charges (and a unit clarification proceedings dealing with the same dispute) were already before the Board, and its petition for an injunction was based on a statutory provision, 29 U.S.C. § 160(*l*), which enables the NLRB to seek preservation of the status quo while its evaluation of a case is in progress. *Boire, supra,* at 784. It is one thing for a court to refuse to enforce an arbitration award when the NLRB protests that enforcement would impair Board processes. It is another to "protect" the Board's processes when no unfair labor practice charge is presently pending and no request for a stay of enforcement has been heard from the Board.[6]

In the posture of our case, we believe that we should not readily withhold enforcement of an arbitrator's award. To do otherwise would require us to interpret the National Labor Relations Act, a task which ordinarily is best left to the NLRB. We might also further complicate the process by which this case may finally be resolved. If we enforce the award, its inconsistency with the Act can readily be tested in unfair labor practice proceedings. If we do not enforce it, however, the Teamsters cannot obtain relief by demonstrating to the Board that the company, by failing to comply with the award, is in violation of its contract— for violations of contracts are not necessarily unfair labor practices, and, if not, are not within the Board's purview. *United Steelworkers v. American Int'l Aluminum Corp.,* 334 F.2d 147, 152 (5th Cir. 1964), *cert. denied,* 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611 (1965). Most of the original actions for which the union sought relief in the arbitration could have been categorized as unfair labor practices—but the six month statute of limitations on unfair labor practice charges, 29 U.S.C. § 160(b) has presumably already run on them.

## III. THE PROPRIETY OF THE AWARD IN THIS CASE

In light of our understanding of the limited judicial role in lawsuits of this sort, we turn to the award in this case.

■ Two portions of this award are apparently most controversial. The first is the provision for transfer with superseniority; the second is the application of the Dallas compensation and other benefits to Denison work. It seems clear to us, however, that we cannot refuse enforcement of the superseniority portion of the award. The Division of Advice, after all, has already indicated that the grant of superseniority may not be an unfair labor practice at all.

Perhaps there is a critical distinction between the superseniority decision and the use of the Dallas contract to fix Denison

---

**6.** The NLRB has also obtained injunctions barring arbitration under 29 U.S.C. § 160(*l*), which directs the Board to seek injunctive relief where it has reasonable cause to believe there is a violation of, *inter alia,* the "hot cargo" provisions of the NLRA. *See Danielson v. International Org. of Masters, Mates & Pilots,* 521 F.2d 747 (2d Cir. 1975). As in *Boire,* as in *Danielson,* here the NLRB was directly involved in, and adjudicating the merits of a controversy.

The Board also sometimes intervenes in lawsuits which originally were contested only by private parties. *See, e. g., Smith Steel Workers v. A. O. Smith Corp.,* 420 F.2d 1, 6 (7th Cir. 1969); *Teamsters Local 542 v. Ace Enterprises, Inc.,* 332 F.Supp. 36, 38–39 (S.D.Cal.1971). *See also Central Motor Express, Inc. v. General Drivers Local 89,* 407 F.Supp. 1217 (W.D.Ky. 1975) (postponing enforcement of arbitration award in case NLRB might intervene). In these cases, as in other instances of direct NLRB involvement, the courts are left in no doubt as to the degree and direction of the NLRB's concerns.

compensation. But it can hardly be contended that the superseniority provision is altogether free of impact on the Denison workforce, and thus not at all in tension with the IAM certification. Unions bargain over seniority provisions; they seek, naturally, to maximize the job security and work privileges of those they represent. This goal is frustrated if another group of employees can obtain preferred status. *See generally In re Arbitration Between UAW Local 259 and Kellogg Pontiac Sales Corp.,* 392 F.Supp. 1044 (S.D.N.Y.1975) (refusing to enforce arbitral award which would have granted substantial number of employees right to transfer to new work location pursuant to union's contract, since award conflicted with NLRB decision that contract did not apply to new location, and with election in which union was defeated).

Still, it is evident that the wages provision of the award is at least an additional interference with the exclusive role in bargaining over the terms of Denison employment which the IAM ordinarily would exercise. An influx of Dallas Teamsters, paid at higher rates than their Denison counterparts, surely would cause jealousy and conceivably could undermine the IAM's support. The IAM also might encounter problems in the next round of negotiations, when the inequality in wages might have to be resolved one way or another. *See generally McGuire v. Humble Oil & Refining Co.,* 355 F.2d 352, 357 (2d Cir. 1965).

The district court suggested that the arbitrator could have validly ordered the company to pay damages to the Dallas employees. Such a remedy often would be a happy choice. A lump sum award could, for example, compensate the Dallas employees for the breach of their contract, while leaving intact the terms of the agreement governing Denison. We have approved the payment of damages, based on the breach of an expired contract and awarded in an arbitration conducted at the instance of a decertified union. *United Steel Workers v. United States Gypsum Co.,* 492 F.2d 713 (5th Cir. 1974). *See also United States Gypsum Co. v. United Steel Workers,* 384 F.2d 38 (5th Cir. 1967), *cert. denied,* 389 U.S. 1042, 88

S.Ct. 783, 19 L.Ed.2d 832 (1968). The Second Circuit has also intimated that it could approve a damage award despite an NLRB decision precluding other relief. *Luckenbach Overseas Corp. v. Curran,* 398 F.2d 403, 405–06 (1968); *see In re Arbitration Between UAW Local 259 and Kellogg Pontiac Sales Corp.,* 392 F.Supp. 1044, 1050–51 (S.D.N.Y.1975) (enforcing damages portion of award. The Ninth Circuit reached a somewhat similar conclusion in *IBEW Local 1547 v. Teamsters Local 959,* 507 F.2d 872, 878–79 (9th Cir. 1974).

Admittedly, the propriety of a damage award is not clearly established. Some doubt might be cast upon it by *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). *Carey* upheld the propriety of resort to arbitration to settle a work-assignment or jurisdictional dispute. But Justice Douglas, writing for the Court, observed in *dictum* that:

> "Should the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence; and if the employer's action had been in accord with that ruling, it would not be liable for damages under § 301."

*Id.* at 272, 84 S.Ct. at 409.

Certain subsequent cases have followed the apparent implication of *Carey,* and refused to enforce damage awards where the NLRB had decided the underlying work-assignment dispute. *See Ironworkers Local 395 v. Lake County, Indiana Council of the United Brotherhood of Carpenters,* 347 F.Supp. 1377 (N.D.Ind.1972); *Dock Loaders Local 854 v. W. L. Richeson & Sons, Inc.,* 280 F.Supp. 402 (E.D.La.1968). These cases, however, dealt with situations where the employer could not comply with the arbitrator's assignment of work without violating a specific construction of the National Labor Relations Act by the NLRB. Here, no such square conflict has been demonstrated. Thus, even if employers can escape damage liability when their contractu-

al obligations conflict with statutory duties, a damage award in our case would still be enforceable.

Here, to be sure, the arbitrator awarded wages and other benefits, rather than simply damages. But the distinction between the two in this case could be as much form as substance. At the time that the arbitrator issued his decision, the Dallas plant was still open. Thus, no damages had been suffered. The potential for damages would arise only if the Dallas employees were denied work in Denison, or were paid less for it than they would have received in Dallas. If their pay was less, the measure of damages for the period of their employment at Denison would be the difference in their wage scales. The arbitrator could have ordered the payment of a lump sum at some time in the future, or the payment at once of an estimate of what that lump sum

would be. Instead, he attempted to avoid the need for a damage award by ordering the payment of Dallas wages and compensation. The precise effect of this order is to make the employees whole for any losses they would have suffered. We believe it can fairly be argued, therefore, that if transfer and superseniority are proper, and damages are appropriate as well, then the arbitrator's order of wages and other benefits for the transferees in accordance with the Dallas contract also can be squared with the Board's views.[7]

 The arbitrator's award, then, avoids a clear conflict with the NLRB if it is viewed as essentially a make-whole award. We therefore reject the district court's conclusion that the possibility of interference with the NLRB certification precludes enforcement of the award.[8]

7. In taking this stance, we recognize the apparent inconsistency between our approach and that of the Seventh Circuit in Local 7–210, Oil, Chemical & Atomic Workers v. Union Tank Car Co., 475 F.2d 194 (7th Cir. 1973), cert. denied, 414 U.S. 875, 94 S.Ct. 68, 38 L.Ed.2d 120 (1973). In that case, an arbitrator had ordered Union Tank Car Company to apply its agreement with the OCAW to certain operations once performed by the OCAW but subsequently transferred to a plant covered by a contract with another union, the Boilermakers. The court denied enforcement.

The court felt, and the OCAW conceded, that an NLRB decision certifying the Boilermakers as exclusive bargaining representatives precluded application of the OCAW contract at the new plant. But the court also declined to enforce the arbitrator's order that the company make the OCAW-represented employees whole for any lost wages or monetary fringe benefits. Apparently the only contract violation which the arbitrators sought to remedy was the failure to apply the OCAW contract to the new operations and the court viewed this violation as immunized by the NLRB decision.

Whatever the philosophical differences between Local 7–210 and the view we have taken here, the results in that case and our own are not necessarily in conflict. The arbitrator in our case was careful not to seek to impose the entire Dallas contract at Denison, and found a range of contract violations by Standard Brands quite apart from the failure to apply the Dallas contract.

Standard Brands contends that Sperry Systems Mgmt. Div. v. NLRB, 492 F.2d 63 (2d Cir. 1974), cert. denied, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1976), is also opposed to the result

we reach here. In Sperry, a union representing a New York unit sought to apply its entire contract, with the exception of the provision for union recognition, to employees in California. The union won an arbitration decision to that effect, but the company asserted that efforts to enforce that decision constituted an unfair labor practice, and the Second Circuit agreed, vacating an NLRB dismissal of the employer's charge. The union had already lost a representation election in California, and the Sperry court concluded that the union's efforts to enforce the award amounted to a sub rosa attempt to gain the recognition as bargaining agent which the election defeat precluded. The court also declared that the union had no right to bargain over the terms of employment in California. But it expressly recognized that the union could properly have bargained on this subject if the terms of California employment vitally affected employment in New York.

In no respect is Sperry Systems inconsistent with the result we reach. The union here has foresworn any attack on the IAM's certification. Moreover, the consequences of shifting operations from one plant to another obviously do vitally affect the employees of either plant, and bargaining over such a subject seems entirely proper. Indeed, the Teamsters have pointed out, without contradiction, that contractual provisions speaking to such relocations have become very common in American labor relations.

8. Standard Brands directs a volley of other arguments against the validity of the arbitrator's award. We simply cannot accept, however, Standard Brand's contention that the

## IV. REMAND

We remand the case to the district court, however, for its consideration of the scope of the arbitrator's award. Standard Brands has criticized the award for failing to define the "compensation and other benefits" which it accords to the transferring Dallas employees. While we feel that this phrase could readily be interpreted as encompassing wages and monetary fringe benefits, we believe this issue should be addressed first by the district court. If the arbitrator's intent remains unclear, a remand to the arbitrator for clarification would then be proper. *San Antonio Newspaper Guild Local 25 v. San Antonio Light Division,* 481 F.2d 821, 825 (5th Cir. 1973).

A more important ambiguity in the award is its failure to make clear how long the transferring employees are to be paid in accordance with Dallas standards. The award merely says that Dallas standards will apply until the NLRB. resolves the questions concerning representation posed by the award. Whether such representational questions would be created by enforcement of the award is not clear. Even if such questions arise, and are resolved in the IAM's favor, the arbitrator's authority to award a make-whole remedy might well be intact. Thus, the minimum and maximum periods of this awards effectiveness are not evident, at least at this stage of the proceedings.[9] We remand to the district court for it to determine, if possible, the reach of this award, and to granting enforcement only that part of the award which falls within proper limits. While those limits are cloudy, we can observe that we would have difficulty enforcing an award which imposed foreign contract terms on another plant for an indefinite period. On the other hand, we would view an award which made whole the Dallas employees for losses suffered over the term of their contract as entirely proper.

## V. CONCLUSION

In rejecting Standard Brand's contention that the award by the arbitrator conflicts with the IAM certification, we, of course, do not mean to constrain the NLRB to reach the same conclusion. But it is our primary duty to provide contractual relief, and the contours of that relief, are normally shaped by arbitrators. This award is not, in our view, squarely in conflict with the IAM's certification. It provides a remedy for a serious breach of contract, and our respect for the integrity of the IAM certification does not justify refusing enforcement.

The case is remanded to the district court for further proceedings not inconsistent with this opinion.

COLEMAN, Circuit Judge, dissenting.

I think the District Court properly applied the applicable standard of judicial review in § 301(a) suits for the enforcement of arbitration awards. The majority opinion approaches this appeal as if it were a question of whether *we* should withhold enforcement of the award. I believe that

---

award does not draw its essence from the collective bargaining agreement. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). As the Supreme Court observed in *Enterprise, id.,* the arbitrator's informed judgment is particularly important in the formulation of remedies. Nor does the award exceed the scope of the grievance submitted to the arbitrator, for the rather loosely worded grievance neither specified nor restricted the types of relief with which it was concerned. Moreover, this Court has suggested that such disputes over the scope of a submission are themselves to be resolved by the arbitrator. *United Steel Workers v. United States Gypsum Co.,* 492 F.2d 713, 732 (5th Cir. 1974), *citing John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555–59, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

We reject as well the company's assertion that the award is void for failure to join an indispensable party, the International Association of Machinists. *Cf. Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) (ordering arbitration despite possible absence of one of the disputing unions). The arbitration took place under the Teamsters contract and adjudicated rights between the Teamsters and the company. If the IAM's interests have been seriously damaged, the damage is not irreparable: it can seek relief before the National Labor Relations Board.

9. Though the award may be ambiguous, we emphasize that it is not by its own terms moot. *See* note 4 *supra.*

the true issue is whether the District Court abused its discretion when it denied enforcement.

I would affirm the denial of an injunction which would compel the employer to comply with an award obviously in conflict with an existing National Labor Relations Board certification. There is no way of getting around the fact that the National Labor Relations Board certified IAM, not the Teamsters, as the exclusive bargaining agent for the Denison employees, who, incidentally, were not parties to the execution of the Teamsters agreement for an entirely different plant at Dallas.

An NLRB unit clarification takes precedence over an arbiter's award, *Local 7–210, Oil, Chemical & Atomic Workers v. Union Tank Car Company,* 7 Cir., 1973, 475 F.2d 194; *Smith Steel Workers v. A. O. Smith Corporation,* 7 Cir., 1969, 420 F.2d 1; *New Orleans Typographical Union No. 17 v. NLRB,* 5 Cir., 1966, 368 F.2d 755. The majority opinion acknowledges as much but the prescribed result is not in harmony with that acknowledgement.

If the award in this case is enforced, the Teamsters, not the certified IAM, will have negotiated the terms and conditions of employment in Denison. Moreover Standard Brands will be compelled to violate the NLRB directive that it negotiate exclusively with IAM, § 159 of the Act, and as to which the Board is the exclusive authority, *West Point-Pepperell, Inc. v. Textile Workers Union of America, AFL–CIO, CLC,* 5 Cir., 1977, 559 F.2d 304.

*Sperry Systems Management Division, Sperry Rand Corporation v. NLRB,* 2 Cir., 1974, 492 F.2d 63, was a case in which an employer opened a new plant. The collective bargaining agreement at an older plant provided that the contract there should apply to the company's technical employees wherever located. The arbiter concluded that the agreement's wage and working conditions provision should apply to employees at the new plant. The Second Circuit characterized the union's effort to enforce the award as an attempt to gain *de facto* recognition as the bargaining agent of the employees at the new plant which it had failed to gain in the certification election. The Court determined that the union's actions were merely attempts to subvert the NLRB order regarding the proper bargaining unit.

That is what is happening here, but in this instance the effort gains the assistance of the Court rather than its repudiation.

Additionally, the arbitration award violates an express provision of the agreement. Part I, § 13(f) provided:

"In case of transfer to a new plant, *if permitted under the National Labor Management Relations Act,* that Part of this Agreement relating to the plant affected shall cover such new plant" (emphasis added).

The arbiter ordered application of that portion of the Dallas contract governing compensation and other benefits to the Dallas transferees at the new Denison plant. Effectuation of this portion of the award would result in an unfair labor practice in violation of § 158(a)(1, 3) of the National Labor Management Relations Act.

The cases are legion holding that an arbitration decision which violates any statute or which is inconsistent with public policy will not be enforced.[1]

If Standard Brands had complied with the arbiter's award, it, in effect, would have negotiated conditions of employment with Teamsters, instead of IAM, although IAM had been chosen and certified as the exclusive bargaining representative of the Denison employees. The conclusion seems inescapable that the Denison employees' right to choose their bargaining representative would thus clearly be infringed, violating § 158(a)(1), *Sperry Systems Management*

---

1. *Banyard v. NLRB,* 1974, 164 U.S.App.D.C. 235, 505 F.2d 342; *United Steelworkers v. United States Gypsum Company,* 5 Cir., 1974, 492 F.2d 713, *cert. denied,* 419 U.S. 998, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974); *Ludwig Honold Manufacturing Company v. Fletcher,* 3 Cir., 1969, 405 F.2d 1123; *United States Gypsum* *Company v. United Steelworkers,* 5 Cir., 1967, 384 F.2d 38, *cert. denied,* 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832 (1963); *Glendale Manufacturing Company v. Local No. 520, International Ladies' Garment Workers' Union,* 4 Cir., 1960, 283 F.2d 936, *cert. denied,* 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961).

**710**

*Division, Sperry Rand Corporation v. NLRB,* 2 Cir., 1974, 492 F.2d 63, 70.

According to § 158(a)(1), an employer's attempt "to interfere with, restrain, or coerce employees in the exercise of the [organizational] rights guaranteed in section 157" constitutes an unfair labor practice.

Standard Brands' compliance with the arbiter's decision would also violate § 158(a)(3) and would constitute an unfair labor practice, *Sperry Systems Management Division, Sperry Rand Corporation v. NLRB,* 2 Cir., 1974, 492 F.2d 63. It is "an unfair labor practice for an employer . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization", 29 U.S.C., § 158(a)(3). Disparate wage treatment is clearly discriminatory, *Radio Officers' Union of the Commercial Telegraphers Union v. NLRB,* 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954). Paying the Dallas transferees, and the Denison employees performing work of the same nature as the Dallas operation, compensation higher than that paid the remainder of the Denison employees inescapably tends to encourage membership in Teamsters and to discourage membership in IAM.

For all the above reasons, very cogent ones I believe, I must respectfully dissent.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, and RUBIN, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.